Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 151 | **DATE** | 1/27/2003 |
| **CASE TITLE** | COVELLO vs. CITY OF CHICAGO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted in part and denied in part. Summary judgment is entered in favor of defendant City of Chicago and against plaintiff Covello on count I hostile environment claim and on the count II breach of contract claim. All previously set dates shall stand. Any pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 27 2003 date docketed | 40 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/27/2003 date mailed notice | |
| JS | courtroom deputy's initials | 03 JAN 27 AM 7:34 Date/Time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JAN 2 7 2003

NICHOLAS COVELLO )
)
Plaintiff, )
) No. 02 C 0151
v. )
)
CITY OF CHICAGO )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On April 16, 2002, plaintiff Nicholas Covello ("Covello") filed his amended complaint against defendant City of Chicago ("City"). In count I, Covello alleges he was discriminated against in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), with respect to denials of wage increases and the existence of a hostile work environment. In count II, Covello asserts a supplemental state law breach of contract claim alleging the City breached a 1998 settlement agreement between the parties. On November 15, 2002, the City filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the City's motion is granted in part and denied in part. This court grants summary judgment in favor of the City and against Covello as to the count I hostile environment claim and the count II breach of contract claim, but denies summary judgment as to the count I disparate treatment discrimination claim.

1

## STATEMENT OF FACTS

It is undisputed that Covello's national origin is Italian-American because he has an Italian surname and his great-grandfather was born in Italy. Defendant City of Chicago, Department of Buildings ("Buildings Department"), hired Covello as a building inspector on April 3, 1981. Covello continued in this position without major incident until October 1996, when the City sought to terminate Covello's employment. After an investigation, the City found Covello was inattentive to his duties and filed false reports with the Buildings Department. On December 31, 1996, Covello was discharged from his employment with the City. Covello appealed his discharge to the Personnel Board of the City. Prior to the disposition of the Personnel Board review, Covello and the City successfully negotiated a settlement of Covello's case in 1998 ("1998 Agreement"). The terms of the 1998 Agreement included reinstatement of Covello to his employ with the City. Before the 1998 Agreement was finalized, a newspaper story appeared in the Chicago Sun-Times stating that Covello was charged with deceptive practices and violations of the Illinois Consumer Fraud Act ("ICFA") by the City's Department of Consumer Services. This incident did not relate to the events that led to Covello's December 31, 1996 discharge, but did have an effect on the terms of the 1998 Agreement. Specifically, the 1998 Agreement stated that after his reinstatement with the City, Covello would suffer no disciplinary action as a result of the ICFA charge against him by the City of Chicago's Department of Consumer Services in 1997.

Covello returned to work for the City in August 1998. Covello was assigned to the Strategic Task Force ("STF"), a program within the Department of Buildings. The STF is a group of teams staffed by personnel from several different departments of the City and its job is to enforce the Chicago Anti-Drug/Gang House Ordinance by identifying, inspecting and investigating buildings

2

which are believed to be drug/gang houses or places of ongoing criminal activity. Robert Forgue ("Forgue") managed the STF program from its inception until May 2002. Forgue's title was project manager and he supervised a staff of inspectors and inspection supervisors, including Covello. The Assistant Project Manager for STF since its inception has been William Bugajski ("Bugajski").

At all times relevant to this case, there existed a collective bargaining agreement ("CBA") between the City and the Carpenter's Union Local 13 ("Union") which governed the terms and conditions of Covello's employment. The parties dispute whether the pay increases for building inspectors provided for in the CBA are based on merit or solely on longevity and continuous service.[1] The City presents testimony that the CBA provides for merit-based increases to benefit those employees which have exhibited at least minimal acceptable job performance during the evaluation period, and also for pay increases based on length of service. The City presents testimony that when an inspector becomes eligible to be considered for a merit increase, that building inspector's supervisor, either a deputy commissioner or project manager, evaluates the inspector's job performance since the last time the inspector was eligible for a merit increase to determine whether that inspector will receive a merit increase in pay. According to the City, the deputy commissioner or project manager is not required to ask or meet with the employee or communicate the decision to grant or deny the merit increase to the employee. The City does not attach or include

---

[1] In support of his argument that the pay increases are not based on merit, Covello submits the affidavit of Thomas E. Ryan ("Ryan"), the Business Representative and Financial Secretary of the Union. The City has filed a motion to strike Ryan's affidavit. Covello did not list Ryan as a person likely to have discoverable information in his Federal Rule of Civil Procedure 26(a)(1) Initial Disclosures, nor did Covello identify Ryan during written discovery as a person known to Covello to have any knowledge or information with respect to the matters alleged in the complaint, EEOC charge, or claims for damages or injuries. In addition, Covello failed to identify Ryan in his supplement to his discovery responses. For these reasons, this court grants the City's motion to strike and therefore will not consider the Ryan affidavit in deciding the present motion for summary judgment.

any portion of the CBA which outlines the procedures for the merit-based pay increases. Covello, on the other hand, argues that the CBA does not allow for pay increases based on merit. Citing to the portion of the CBA which addresses wage increases, Covello points to the fact that the CBA does not mention the term "merit" in this section and instead provides for pay increases based only on two requirements, continuous service and longevity. Further, Covello contends that Article XVIII of the CBA provides a progressive disciplinary procedure for employees who fail to meet work expectations, and that this article requires the employer and employee to meet prior to disciplinary actions pursuant to notice detailing the proposed disciplinary action and the reasons.

Whether the pay increases were based on merit or longevity, the parties do not dispute that Covello first became eligible for a pay increase on January 16, 1999. However, the parties do dispute the reason for the pay increase denial. The City presents evidence that Covello was denied a pay increase at that time because, in the opinion of Forgue and Bugajski, Covello's inspection work at STF was deficient in several respects, including: failure to complete inspection reports in a timely fashion, failure to submit accurate and legible inspection reports, consistent writing of fewer violations than other inspectors for comparable buildings, inability to gain entry into a much higher proportion of buildings than other inspectors in comparable buildings. The City presents testimony that Forgue, in a memorandum to the Commissioner of the Department of Buildings, found Covello's work performance unsatisfactory and that he should not receive a pay increase. This court notes that a copy of Forgue's memorandum is not included in the record.

The City presents evidence that after the denial of this first pay increase, Covello's work performance did not improve and therefore, the City denied Covello all the subsequent pay increases he became eligible for on the following dates: April 16, 1999, July 16, 1999, December 16, 1999,

4

April 16, 2000, July 1, 2000, October 16, 2000, April 16, 2001, and October 16, 2001. Covello contends that these pay increase denials could not have been based on merit, as the CBA did not provide for merit as a factor in the pay increase determination, and that a denial of pay is an improper form of discipline. The parties dispute whether Covello had been subject to any discipline since his return to work for STF in 1998, whether the City ever conducted any type of evaluation of Covello's work performance prior to Covello's filing a grievance and claim against the City for discrimination, and whether Forgue was the only person responsible for denying Covello pay increases. Covello presented evidence that he was the only building inspector in the STF who has been denied every pay raise from 1999 through 2002.

At some point in time after Covello began working in the STF in August 1998, it is undisputed that Forgue, a former state's attorney for organized crime activities, told Covello that he had prosecuted one of Covello's family members when he was a state's attorney. The parties dispute whether Forgue told Covello that he would be watching Covello because Covello is Italian, whether Forgue showed Covello a criminal line-up photo and asked if Covello knew anyone because Covello is Italian, and whether Forgue said he wanted to learn to speak Italian by watching hand gestures. Of these four incidents, the record establishes that Covello only formally reported the last incident to the City's Building Department on October 23, 2001. The City presented evidence that in the fall of 2000, Forgue observed and received information from other inspectors that plaintiff would frequently not be at his assigned district completing his work obligations. Forgue forwarded this information to the Inspector General's Office of the City of Chicago and asked that the office undertake an investigation of plaintiff. Also at this time, Forgue, became suspicious that a certain building Covello owned in Chicago housed a bar that had connections to organized crime. Forgue

5

also provided this information to the Organized Crime Division of the Chicago Police Department, which conducted a surveillance of Covello and found Covello to be in dereliction of his duty to the Buildings Department. Forgue was given a copy of the surveillance report. In January 2001, Forgue removed Covello from performing field assignments and assigned plaintiff to work in the offices of the STF program. In 2002, Covello was transferred from this desk job in the STF program to a position in the demolition division of the Buildings Department.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986).

## ANALYSIS

I. Count I - Discrimination in Denial of Wage Increases

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Covello presents no direct evidence of discrimination and pursues his Title VII disparate treatment discrimination claim under the burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); see Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir.2002). Under this method, a plaintiff must establish a prima facie case of discrimination. See Peele, 288 F.3d at 326. Once he has done so, the employer must then produce a nondiscriminatory reason for the employment action. See id. If the employer does so, the plaintiff must then present sufficient evidence that would enable a trier of fact to find that the explanation is pretextual. See id. In order to establish a prima facie case of discrimination, Covello is required to establish: (1) that he was a member of a protected class; (2) that he was performing his job satisfactorily; (3) that he experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably. See Traylor v. Brown, 295 F.3d 783, 787-88 (7th Cir. 2002). It is undisputed that Covello meets the first and third prongs of the prima facie case.

As to the second prong, this court finds that Covello has presented sufficient evidence to create a genuine issue of material fact with respect to whether Covello was performing his job satisfactorily. Because consideration of the second prong of the prima facie case necessarily "ties in with the next step in the burden-shifting analysis," this court also concludes that genuine issues of material fact exist as to whether the City has provided a legitimate, nondiscriminatory reason for its adverse employment action. See Mateu-Anderegg v. School District of Whitefish Bay, 304 F.3d 618, 625-26 (7th Cir. 2002). The City has presented Forgue's and Bugajski's testimonies that Covello was denied pay raises because his work performance was deficient in several respects and

7

the police surveillance report in connection with the Chicago Police Department investigation in November 2000 as evidence of Covello's dereliction. However, Covello has countered with evidence that merit pay increases did not exist under the CBA, that any problems with poor work performance were to be handled through the disciplinary procedures outlined in Article XVIII of the CBA, and that Covello was not subject to any Article XVIII discipline during his employment in the STF department. This court does not find any written evaluations of Covello in the record, and Covello has presented some evidence that the City did not conduct any type of evaluation of Covello's work performance until after Covello filed a grievance and sued the City for discrimination. Further, this court notes that during Covello's employment in the STF division, there is no evidence in the record that the City took any action to terminate Covello's employment. Viewing all the evidence in the light most favorable to Covello, as this court must, and drawing all justifiable inferences in Covello's favor, this court finds that Covello has presented sufficient evidence to create a genuine issue of material fact to require trial as to the second prong of the prima facie case.

The City also contends that Covello fails to establish the fourth prong of the prima facie test, that similarly-situated employees were treated more favorably. To establish this prong, Covello presented the work histories and pay for every carpenter building inspectors to work in STF under Forgue. Covello relies on the non-Italian surnames of the building inspectors and the fact that their work histories reveal that Covello is the only building inspector supervised by Forgue that was denied every pay raise for the whole period he worked at STF to support his proposition that similarly-situated employees were treated more favorably. The City argues there is no evidence that the other building inspectors are similarly situated with respect to experience, education,

qualifications, and performance. However, as discussed above, it is disputed whether the pay raises Covello was denied and other inspectors were given were based on merit or solely on longevity and continuous service. If the raises were based solely on longevity and continuous service, and not merit, then Covello's failure to present evidence as to education, experience, qualifications and performance is not fatal to his prima facie case. The City also argues that Covello's failure to specify the national origin of each building inspector listed warrants a grant of summary judgment in favor of the City. However, in reviewing the work histories produced and the non-Italian surnames of the building inspectors, and making all reasonable, justifiable inferences in favor of Covello, this court finds that Covello has produced sufficient evidence to survive summary judgment on the fourth prong of his prima facie case.

Finally, a plaintiff may show pretext directly by presenting evidence that the employer was more likely than not motivated by a discriminatory reason, or indirectly by presenting evidence that challenges the credibility of the employer's explanation. See Collier v. Budd Co., 66 F.3d 886, 892 (7th Cir.1995); Robinson v. PPG Indus., 23 F.3d 1159, 1163 (7th Cir.1994). This court finds that the evidence Covello presents that pay increases are not based on merit under the CBA, coupled with the alleged statements Forgue made about Covello being Italian, is sufficient to create a dispute as to the credibility of Forgue's alleged merit-based denials of pay increases to Covello. For all the reasons articulated above, this court finds that genuine issues of material fact preclude the grant of summary judgment as to Covello's claim of discrimination against the City in its denial of pay increases to Covello.

II. Count I - Hostile Environment

Covello further maintains in count II that the City, through the words and actions of Forgue,

created a hostile work environment for Covello because of his ethnicity and national origin. To support his claim, Covello cites to the four instances in which Forgue made allegedly discriminatory statements: telling Covello that he was on the watch for him because he was Italian, stating in the presence of Covello that he wanted to learn Italian by watching hand gestures of people talking, showing Covello a picture of a criminal line-up and asking Covello if he knew anybody, and telling Covello that he was responsible for putting one of Covello's family members behind bars for organized crime activities. Further, Covello contends that Forgue's reporting Covello to the Chicago Police Department Organized Task Force constituted harassing conduct.

Title VII prohibits an employer from maintaining a workplace that is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367 (1993) (quoting Meritor Savings Bank, FSB v. Vinson et al., 477 U.S. 57, 65-67, 106 S.Ct. 2399 (1986)). To determine whether Forgue's conduct created an objectively hostile work environment, this court must consider the frequency and severity of the complained conduct, and whether it unreasonably interferes with a person's work performance or creates an intimidating, hostile, or offensive work environment. See Hilt-Dyson v. Chicago, 282 F.3d 456, 462-63 (7th Cir.2002); Ngeunjuntr v. Metropolitan Life Ins. Co., 146 F.3d 464, 467 (7th Cir.1998). Moreover, a hostile work environment is one that is "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Hilt-Dyson, 282 F.3d at 463.

This court finds that accepting all Covello's evidence on Forgue's alleged acts and comments to be true, they were not severe and pervasive enough to support Covello's hostile environment

claim. First, Covello's argument that Forgue's reporting him to the Chicago Police Department Organized Crime Task Force supports his hostile environment claim fails. It is undisputed that Covello was unaware of the Chicago Police Department's investigation until after the commencement of this case, long after the surveillance had ended. As to Forgue's alleged comments to Covello, these comments occurred sometime over three years, between the time Covello began working at STF in August 1998 through sometime in 2002 when Covello was transferred to the Demolition division of the Buildings Department. Plaintiff only made one report of harassment on October 23, 2001. Forgue's comments, while no doubt troubling and offensive, do not, by virtue of their frequency or severity, rise to the level of a Title VII violation. See Faragher v. Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 2283 (1998) ("[S]imple teasing," "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); Salvadori v. Franklin School Dist., 293 F.3d 989, 997 (7th Cir. 2002) ("The mere utterance of a racial epithet that engenders offensive feelings does not sufficiently affect the conditions of employment to create a hostile work environment."); McKenzie v. Illinois Dept. of Transp., 92 F.3d 473, 480 (7th Cir. 1996) ("[I]solated and innocuous incidents will not support a hostile environment claim"). Cf. Cerros v. Steel Techs., Inc., 288 F.3d 1040, 1046-47 (7th Cir.2002) (reversing summary judgment for defendant on hostile work environment claim where plaintiff was subjected to direct and highly offensive racial epithets by both coworkers and supervisors, where coworkers openly advocated the Klu Klux Klan and "White Power," and where there was racially offensive graffiti on the bathroom walls).

Finally, even if this court were to find that Forgue's comments created an objectively hostile environment, Covello has not established that he subjectively perceived Forgue's comments to be

hostile and abusive. Although Covello states that he was humiliated by Forgue's conduct, he has not presented any evidence that Forgue's comments interfered with his ability to perform his work as a building inspector. See Carr v. Allison Gas Turbine Div., Gen. Motors Corp., 32 F.3d 1007, 1009 (7th Cir.1994) ("Title VII is not directed against unpleasantness per se but only . . . against discrimination in the conditions of employment."). Covello has not presented evidence to establish that he did in fact perceive his work environment to be so offensive or humiliating that it unreasonably interfered with his work performance. Accordingly, this court grants summary judgment in favor of the City and against Covello as to the count I hostile environment claim.

III. Count II - Breach of Contract

In Covello's final claim, he contends that the City breached the 1998 Agreement reached between Covello and the City following Covello's discharge on December 31, 1996. Covello argues that the City breached the 1998 Agreement when it refused to grant Covello pay increases as a form of discipline for actions Covello took in connection with the deceptive practices and ICFA charges brought against Covello by the City of Chicago Department of Consumer Services in 1997. Under Illinois law, in a breach of contract claim, the plaintiff must show (1) the existence of a valid and enforceable contract; (2) the performance of the contract by the plaintiff; (3) the breach of the contract by the defendant; and (4) resulting injury to the plaintiff. See Priebe v. Autobarn, Ltd., 240 F.3d 584, 587 (7th Cir. 2001) (quoting Hickox v. Bell, 195 Ill.App.3d 976, 992, 552 N.E.2d 1133, 1143 (1990) (citations omitted)).

Here, it is undisputed that Covello and the City entered into the 1998 Agreement, which, in part, provided that Covello would suffer no disciplinary action as a result of Covello being charged in 1997 with deceptive practices and violations of the ICFA. However, beyond this, plaintiff has

failed to proffer any evidence suggesting that Forgue's denial of Covello's pay increases as a building inspector was a form of discipline related to the 1998 Agreement or the deceptive practices and ICFA charges against Covello in 1997. While Forgue knew that Covello had been reinstated in the STF division pursuant to the 1998 Agreement, Forgue had not read the Settlement Agreement and did not know Covello had been charged with deceptive practices or violations of the ICFA when he made the decisions to deny Covello pay increases at issue. This court finds that Covello has not demonstrated that there is a genuine issue of material fact that requires trial as to his count II breach of contract claim and as a matter of law, the City is entitled to summary judgment on this count.

## CONCLUSION

For all the reasons stated above, defendant City of Chicago's motion for summary judgment is granted in part and denied in part. This court grants summary judgment in favor of the City and against Covello as to the count I hostile environment claim and the count II breach of contract claim, but denies summary judgment as to the count I disparate treatment discrimination claim. All previously set dates remain. Any pending motions are moot. The parties are urged to discuss settlement.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: January 27, 2003